**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SOUTH MISSISSIPPI ELECTRIC POWER ASSOCIATION, Respondent.**

No. 79-2733
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

May 8, 1980.

* Fed.R.App.P. 34(a), 5th Cir. R. 18.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner.

Jolly, Miller & Milam, Kenneth E. Milam, James R. Lockard, Jackson, Miss., for respondent.

Before RONEY, KRAVITCH and TATE, Circuit Judges.

TATE, Circuit Judge:

The National Labor Relations Board seeks enforcement of its March 26, 1979 [1] order against South Mississippi Electric Power Association (the company) finding that employer in violation of Section 8(a)(5) and (1) of the National Labor Relations Act by its refusal to bargain with the recently certified union.[2] The company's defense in the unfair labor practice proceeding and its only argument before this court is that the union was improperly certified, or, at the

1. The Board's order, which is reported at 241 NLRB No. 51, requires the company to cease and desist from its unlawful conduct, to bargain with the union upon request and to post an appropriate notice.

2. The International Brotherhood of Electrical Workers, Local 903, AFL–CIO.

very least, that the company was denied due process in the Board's failure to conduct an evidentiary hearing on the company's objections to the union's election. Because we now find that the Board's certification of the union and its refusal of an evidentiary hearing were reasonable and based on factfindings supported by substantial evidence, we grant enforcement of the Board's order.

The International Brotherhood of Electrical Workers, Local 903, AFL–CIO, was certified by the Acting Regional Director of the National Labor Relations Board in a supplemental decision addressing company objections to the election proceedings on September 28, 1978. This decision became final with the Board's denial of the company's request for review on November 20, 1978. The company subsequently refused to bargain with the union, thereby provoking an unfair labor practice complaint, which it defended with renewed objections to the election and certification of the union. The Board granted summary judgment in favor of the union and applied to this court for enforcement of its order.

■ Since an employer cannot be held in violation of the Act for a refusal to bargain with an incorrectly certified employee representative, this proceeding, as is often the case, subjects the certification of the union to judicial review. *N.L.R.B. v. Allis Chalmers Corp.*, 601 F.2d 870 (5th Cir. 1979). Our consideration must conform to a firmly-established standard of review: the enforcement is to be granted if the Board decision to certify was reasonable and based on substantial evidence. The employer bears the burden of proving that the election should be set aside. *Id.*

In its original challenge to the union's conduct with respect to the election, the company raised two objections. In its opposition to enforcement of the Board order, however, the company reduces its complaint to the single allegation that the union observer maintained an eligibility list of voters and thus destroyed the "laboratory conditions" which the Board deems necessary to a free and fair election. The sworn statements by the union observer, the company observer, and one other employee were considered and discussed in detail by the Acting Regional Director. These established that the union observer had an employee voting list and that he may have briefly compared his list to the official list of those who had voted once during morning balloting and once during afternoon balloting. The two observers' statements disagree as to whether marks on the controversial list were made the night before (in anticipation of challenging certain voters) or during the voting period. The list was generally kept face down on a table or in the union observer's pocket.

■ The Acting Regional Director found it unnecessary to make a credibility determination and assumed *without finding* that the statements of the company's affiant accurately portrayed the union observer's conduct. He nevertheless did not find the fairness of the election to be vitiated because, even crediting fully the statements on behalf of the company, (1) the union observer could have recorded only a small number of those who had voted and (2) this occurred during a period of time when no eligible voters were in the voting area. These conclusions are supported by substantial evidence, including the statements offered by the challenger to the election. The legal conclusion that under these circumstances, any list kept by the union observer, even an eligibility list disapproved under *International Stamping Co., Inc.*, 97 N.L.R.B. 921 (1951), would not create a coercive atmosphere tainting the fairness of the election is a reasonable one and is supported by *A. D. Julliard and Co.*, 110 NLRB 2197 (1954). *See also Robert's Tours, Inc. v. N.L.R.B.*, 578 F.2d 242 (9th Cir. 1978).

■ The company's complaint with respect to denial of an evidentiary hearing in its election challenge is equally lacking in merit. Neither the Constitution nor Congress grant a right to a full evidentiary hearing in union election challenges, *N.L.R.B. v. Dobbs House, Inc.*, 613 F.2d 1254, 1256 (5th Cir. 1980), *N.L.R.B. v. Golden Age Beverage Co.*, 415 F.2d 26 (5th Cir. 1969), and the company does not contend other-

wise. The Board, by way of its promulgated regulations has authorized the Regional Director to permit such a hearing, "if it appears to [him] that substantial and material factual issues exist which, in the exercise of his reasonable discretion, he determines may more appropriately be resolved after a hearing." 29 C.F.R. § 102.69(d). Although the Acting Regional Director chose to leave certain factual issues unresolved, these were not substantial and material and therefore did not merit a hearing. Even conceding arguendo the resolution of these issues urged by the company, the company still fails to satisfy the burden of proving that, under applicable legal standards, the election should be overturned.[3] *Cf. Gulf Coast Automotive Warehouse Co., Inc. v. N.L.R.B.*, 588 F.2d 1096 (5th Cir. 1979), where this burden was met.

ENFORCEMENT OF ORDER GRANTED.

---

**3.** The company in opposing enforcement of the Board order in this court, devotes its entire brief to discussion of a 1974 N.L.R.B. decision, *Marathon LeTourneau Company*, 208 N.L.R.B. 213. Neither the decision nor the argument flowing from it was even indirectly presented to the N.L.R.B. or its Regional Director in the prior proceedings on the company's election challenge and the union's unfair labor practice complaint.

In *Marathon LeTourneau* the union challenged a company-sponsored raffle in which employees had the opportunity to sign for a drawing of a color television set as they left the balloting place after voting. Only employees who voted were eligible to participate in the raffle. The employees who chose to do so were asked to identify themselves and confirm that they had voted; their names were then checked off of a voter eligibility list. The Administrative Law Judge, in findings and conclusions adopted by the Board, observed that "by restricting eligibility to participate in the raffle to only those employees who voted in the election, the employer was in a position to know who had not voted. . . . [H]ere, the situation was even more aggravated—this list was available for several hours before the second voting period [of a split election schedule] started.

. . . I find that by maintaining a list whereby it could keep an account of employees who had not yet voted, the employer engaged in conduct which constituted a sufficient invasion of the laboratory conditions which the board so zealously demands in board elections." 208 NLRB at 224.

The company argues that this decision established a policy whereby the keeping of any eligibility list in an election with a split balloting period invalidates the election, whether or not the employees were aware of the list, because regardless of whether it is actually so used, it presents the opportunity for coercion of the employees who have not yet voted. Regardless of any policy possibly announced in *Marathon LeTourneau*, however, we find the case inapposite to the facts at hand. While the Regional Director declined to resolve credibility differences, he did find, on the basis of uncontroverted statements that only a small number of voters could have been recorded by the union observer. In this context, no practical opportunity for coercion is presented. Because the observer could have recorded only a fraction of those who had voted, the union was not "in a position to know who had not voted."

* Fed.R.App.P. 34(a); 5th Cir.R. 18.