NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

HUDSON OXYGEN THERAPY SALES
COMPANY, Respondent.

No. 84–7218.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 14, 1985.

Decided June 28, 1985.

---

Lynn Deitch, Judith Dowd, Washington, D.C., for petitioner.

Nancy L. Ober, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for respondent.

Before FLETCHER, BOOCHEVER, and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

The National Labor Relations Board ("Board") petitions for enforcement of its bargaining order issued on February 29, 1984 against Hudson Oxygen Therapy Sales Company ("Hudson Oxygen"). 268 N.L.R.B. No. 210. The bargaining order was predicated on an election conducted on October 3, 1980, in which out of a total of 593 eligible voters, 361 ballots were cast

for the Sales Drivers and Dairy Employees, Local 166, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Union"); 173 were cast against the Union; and 5 ballots were challenged. Hudson Oxygen filed timely objections to the election, and after an administrative investigation, the Regional Director recommended that the objections be overruled and that the Union be certified as the bargaining agent. Hudson Oxygen filed objections to the Regional Director's report. On March 18, 1981, the Board adopted the Regional Director's recommendations and certified the Union. Hudson Oxygen then refused to bargain with the Union, and the Union responded with an unfair labor practice charge, asserting that the failure to bargain violated sections 8(a)(5) and (1) of the National Labor Relations Act. 29 U.S.C. § 158(a)(5) & (1) (1982). The Board found that Hudson Oxygen had violated the Act and issued an order requiring Hudson Oxygen to bargain with the Union. *Hudson Oxygen Therapy Sales Co.*, 257 N.L.R.B. 1193 (1981). We denied enforcement and remanded to the Board for a hearing on Hudson Oxygen's objections. *NLRB v. Hudson Oxygen Therapy Sales Co.*, 698 F.2d 1231 (9th Cir. 1983) (table) (unpublished memorandum disposition). Pursuant to our remand, an Administrative Law Judge conducted a hearing on Hudson Oxygen's objections to the election.

On the basis of the hearing, the Administrative Law Judge recommended that the Board reaffirm its bargaining order. The Administrative Law Judge concluded that the company's objection based on supervisory taint was not properly before him and conducted an evidentiary hearing on the remaining three objections. Hudson Oxygen submitted no evidence with respect to two of the remaining objections. As to the final objection—that the Union engaged in electioneering near the polling place—the

Administrative Law Judge found that if electioneering occurred, "it ended before the polls opened. Accordingly, as a matter of law it cannot constitute objectionable conduct." The Board adopted the Administrative Law Judge's recommendations, conclusions, and findings. 268 N.L.R.B. No. 210.

In this enforcement proceeding, Hudson Oxygen continues to advance only two of its four objections to the election.[1] The first objection urged before us is that the Union engaged in electioneering in the polling area. The second objection is a renewal of the claim that supervisory taint invalidated the election. We consider each objection in turn.

### I

Hudson Oxygen's first objection to the election relates to an incident that occurred on the day of the election, October 3, 1980. Before the commencement of the afternoon voting period, employees lined up outside the polling place, a lunchroom, waiting to vote. The crowd chanted "Vote Yes, Vote Yes," for a period of two or three minutes, but the chanting ceased several minutes before the opening of the polls. The evidence presented to the Administrative Law Judge was in conflict, but his decision assumed that a Union official participated in the chanting.

Hudson Oxygen argues that the chanting violated a Board rule against electioneering at the polling place. The Supreme Court has clearly enunciated the standard for reviewing the Board's application of its rules: "The judicial role is narrow: The rule which the Board adopts is judicially reviewable for consistency with the Act, and for rationality, but if it satisfies those criteria, the Board's application of the rule, if supported by substantial evidence on the record as a whole, must be enforced." *Beth Israel Hospital v. NLRB*, 437 U.S.

---

1. The first objection we consider also included an assertion that the Board's agents created the impression of partiality by allowing two union officials to remain in the voting area during a ten-minute period before voting began. The Administrative Law Judge concluded that no impression of partiality was created, and Hudson Oxygen no longer urges this portion of its objection.

483, 501, 98 S.Ct. 2463, 2473, 57 L.Ed.2d 370 (1978) (citations omitted)

*Milchem, Inc.*, 170 N.L.R.B. 362 (1968), the case relied upon by Hudson Oxygen, is but one of a series of Board decisions establishing rules governing representation elections. *Milchem* announced a per se rule prohibiting electioneering in the form of sustained conversations between union or company representatives and employees standing in line and waiting to vote. 170 N.L.R.B. at 362–63. The chanting which is the focus of Hudson Oxygen's objection does not fall within the holding of *Milchem.*

■ *Milchem* was adopted in the context of the more general rule that coercive conduct, including the use of threats, intimidation, and violence, is evaluated under the Board's "laboratory conditions" standard. *General Shoe Corporation,* 77 N.L.R.B. 124, 127 (1948).[2] In contrast to the prohibition of coercive conduct, the Board permits legitimate "electioneering" subject to specific regulations. Early decisions of the Board enunciated a rule prohibiting even noncoercive electioneering at the polling place while voting is in progress. *Detroit Creamery Co.,* 60 N.L.R.B. 178, 180 (1945); *Kilgore Manufacturing Co.,* 45 N.L.R.B.

468, 470 (1942). The Board has also adopted a rule prohibiting one specific form of electioneering—"captive audience" speeches on company time—within the twenty-four hour period immediately preceding an election. *Peerless Plywood Co.* 107 N.L.R.B. 427, 429 (1953).[3]

■ The Board has consistently held, however, that the general rule against electioneering at the polling place is limited to electioneering that occurs while the polls are open. Electioneering that occurs before the polls are open is simply not in violation of the rule. *See, e.g., Nestle Co.,* 248 N.L.R.B. 732, 742 (1980); *Cumberland Nursing & Convalescent Center,* 248 N.L.R.B. 322, 323 (1980); *Pastoor Brothers Co.,* 223 N.L.R.B. 451 (1976); *Doughboy Plastic Production, Inc.,* 122 N.L.R.B. 338, 341 (1958); *General Steel Tank Co.,* 111 N.L.R.B. 222, 224 (1955); *Mutual Distributing Co.,* 83 N.L.R.B. 463, 464 (1949). In particular, the *Milchem* rule has been limited to conversations that take place while the polls are open. *Lincoln Land Moving & Storage, Inc.,* 197 N.L.R.B. 1238, 1239 (1972). Since Hudson Oxygen does not contest the fact that the electioneering occurred before the polls opened, there can be

**2.** Hudson Oxygen argues that the Board erred by failing to evaluate the chanting by the general "laboratory conditions" standard. This contention fails because it ignores the distinction between coercive or other aggravated conduct that prevents freedom of choice and noncoercive electioneering. Chanting "Vote Yes" is not the type of conduct that violates the Board's laboratory conditions standard. In order to demonstrate violation of the "laboratory conditions" standard, Hudson Oxygen was required to demonstrate that the challenged conduct was coercive or intimidating, denying voting employees a free and uninhibited choice. *See NLRB v. Aaron Bros. Corp.,* 563 F.2d 409, 412 (9th Cir.1977); *Dumont Electric Corp.,* 97 N.L.R.B. 94, 96 (1951).

Hudson Oxygen never attempted to meet this burden. No evidence was presented to the Administrative Law Judge that any employees were coerced or intimidated by the chanting. Indeed, Hudson Oxygen in its brief to this court asserts only that the employees "may have felt coerced and intimidated." This case resembles *Doughboy Plastic Production, Inc.,* 122 N.L.R.B. 338 (1958), in which the Regional Director con-

cluded, "Although it appears that the Employer engaged in antiunion electioneering in the vicinity of the polls up until the election started, there is no evidence that such conduct took place while the polls were open. Since there is no showing that the conduct in question was of a coercive nature, it is recommended that this objection be overruled." *Id.* at 341.

**3.** The force of the rule against electioneering while the polls are open has changed over time. Some decisions appear to create a per se rule automatically invalidating an election in which the successful party's representatives engaged in electioneering while the polls are open. *See Milchem,* 170 N.L.R.B. at 362. Other decisions of the Board appear to require both a violation of the rule and a showing of impact on the election before an election will be set aside. *See Cumberland Nursing & Convalescent Center,* 248 N.L.R.B. 322, 323 (1980); *Southern Wood Preserving Co.,* 89 N.L.R.B. 1243, 1245 (1950). The Board may alter its rules. When it does so, we review the revisions for rationality and consistency with the Act. *NLRB v. Nevis Industries,* 647 F.2d 905, 909 (9th Cir.1981).

no doubt that "substantial evidence" supported the Board's application of its election rules.

Given that there was no violation of the Board's election rules, Hudson Oxygen's objection to the election is somewhat difficult to fathom. We have long held that the Board has wide discretion in establishing election procedures and in interpreting its rules governing elections. *See Department & Specialty Store Employees Union Local 1265 v. Brown*, 284 F.2d 619, 627 (9th Cir.), *cert. denied*, 366 U.S. 934, 81 S.Ct. 1659, 6 L.Ed.2d 846 (1961). The only argument open to Hudson Oxygen would appear to be a challenge to the rule itself, based upon the contention that the rule is either irrational or inconsistent with the purposes of the Labor Act. *See NLRB v. Nevis Industries*, 647 F.2d 905, 909 (9th Cir.1981).

■ Hudson Oxygen contends electioneering before the polls open can have the same influence on voters as electioneering while voting is taking place. Therefore, Hudson Oxygen argues, a rule prohibiting electioneering only after the polls open is irrational. We reject this argument. The Board's responsibility to make rules governing representation elections requires the Board to draw some "bright lines" between permitted and prohibited conduct. Such per se rules necessarily approximate the result that would be reached if electioneering were regulated only on a case-by-case basis. The failure of per se rules to achieve their goals with mathematical precision does not, however, render them "irrational." To the contrary, by announcing per se rules which establish categories of permitted and prohibited conduct, the Board provides predictability and stability for the participants in a representation election. Announcing such general rules is at the very least a rational method for the Board to carry out its mandate to ensure fair elections. The authority of the Board to establish election rules in adjudicatory proceedings is now unquestioned. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974).

■ The particular rule adopted by the Board—distinguishing between prohibited electioneering at the polling place while the polls are open and permitted electioneering before the polls open—is neither irrational nor inconsistent with the purposes of the Labor Act. One indication of the rule's consonance with the purposes of the Act is the fact that many jurisdictions make a similar distinction in their regulation of political elections. The analogy to the political arena is especially persuasive because Congress intended representation elections to follow the model of elections for political office. *See Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 504, 88 S.Ct. 1743, 1750, 20 L.Ed.2d 763 (1968). Moreover, the purpose of the rule against electioneering at the polling place while voting is in progress is to permit voting to take place in an atmosphere permitting sober reflection and calm deliberation. *See Robert's Tours, Inc. v. NLRB*, 578 F.2d 242, 244 (9th Cir.1978). It is certainly not irrational for the Board to conclude that a general rule can permit electioneering before voting has commenced in order to achieve the goal of maximizing both freedom of choice and the opportunity for noncoercive speech about the election. We conclude that the rule prohibiting electioneering only while the polls are open is both rational and consistent with the purposes of the Labor Act.

## II

Hudson Oxygen's second objection to the election relates to its allegations that a supervisor encouraged employees and subordinate supervisors to sign authorization cards and to vote for the Union in the election. The Administrative Law Judge refused to take evidence on this objection on the ground that Hudson Oxygen had failed to raise the supervisory taint issue in a timely fashion. The Board affirmed the Administrative Law Judge's ruling.

Hudson Oxygen concedes that it did not raise the specific issue of supervisory taint in its initial objections to the election. Respondent does not challenge the Board's

rule requiring objections to an election to be filed within five days after the tally of ballots has been furnished. 29 C.F.R. § 102.69(a) (1984). Nor does Hudson Oxygen contend that its failure to raise the supervisory taint objection in a timely fashion is excused because the evidence of supervisory taint was newly discovered or previously unavailable. *See Tuf-Flex Glass*, 262 N.L.R.B. 445, 455 n. 2 (1982), *enforced*, 715 F.2d 291, 294–95 fn. 1 (7th Cir.1983).

█ Instead, Hudson Oxygen argues that the supervisory taint issue was related to the objections that were lodged against the election in a timely fashion. Although an objection based on supervisory taint is "related" to objections based on electioneering at the polling place in the limited sense that all such objections go to the validity of the election, this relationship is not sufficient to give the Board reasonable notice of the nature of the objection. None of the objections that were raised in a timely fashion contained even a suggestion of supervisory taint.

Finally, Hudson Oxygen argues that the Board's failure to consider the supervisory taint objection is inconsistent with the Board's established policy that "once a timely objection has been registered and triggers an investigation, a regional director *must* consider *all* evidence of improper conduct that is uncovered or brought to his attention in the course of his investigation...." *NLRB v. Campbell Products Dept.*, 623 F.2d 876, 880 (3d Cir. 1980). The difficulty with this argument is that the Regional Director did not uncover any evidence of supervisory taint, and Hudson Oxygen failed to bring any such evidence to the Regional Director's attention. The Regional Director did consider the evidence that was before him.

█ Hudson Oxygen's position appears to be that the Board's Regional Director has a duty to uncover all misconduct and that if he fails to discover a particular instance of misconduct, an objecting party may subsequently raise the new objection, even without complying with time limits

established by the Board. The law, however, is clear that the burden is on the objecting party to present the Board with evidence in support of its objections. *See NLRB v. Mattison Machine Works*, 365 U.S. 123, 123–24, 81 S.Ct. 434, 435, 5 L.Ed.2d 455 (1961). Hudson Oxygen failed to meet its burden; this failure is not excused because a more comprehensive investigation by the Regional Director could have turned up evidence that would have met the burden.

█ Because Hudson Oxygen failed to properly raise the supervisory taint objection before the Board, we cannot consider it here. Section 10(e) of the Labor Act provides,

No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.

29 U.S.C. § 160(e) (1982). Under Section 10(e), we would have been without jurisdiction to hear the supervisory taint claim when this case was previously before us. *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665–66, 102 S.Ct. 2071, 2083, 72 L.Ed.2d 398 (1982). Accordingly, the supervisory taint objection could not have been within the scope of our remand order, and we have no jurisdiction to consider the objection as raised in this enforcement proceeding.

The Board's order is ENFORCED.