**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**and**

**Local 76 International Ladies' Garment Workers Union, AFL–CIO, Intervenor,**

v.

**DEL REY TORTILLERIA, INC., Respondent.**

**No. 86–1251.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1986.

Decided July 8, 1987.

John H. Ferguson, NLRB, Washington, D.C., William A. Widmer, III, Carmell, Charone, Widmer & Mathews, Ltd., Chicago, Ill., for petitioner.

Irving M. Geslewitz, Adams, Fox, Adelstein & Rosen, Chicago, Ill., for respondent.

Before CUDAHY and RIPPLE, Circuit Judges, and WILL, Senior District Judge.[*]

RIPPLE, Circuit Judge.

The National Labor Relations Board (NLRB or Board), pursuant to section 10(e) of the National Labor Relations Act (NLRA or the Act), 29 U.S.C. § 160(e), seeks enforcement of a bargaining order issued against the respondent company, Del Rey Tortilleria, Inc. (the Company). The Board found that the Company violated section 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1), (5), by refusing to bargain with the intervenor, Local 76, International Ladies' Garment Workers Union,

AFL–CIO (the Union), and by refusing to provide information the Union needed to carry out its duties as the employees' bargaining agent. The Company had justified its refusal to comply with the Act on the ground that the Union was not properly certified as the employees' bargaining agent because an organizer had electioneered at or near the polling areas at the time of the representation election. For the reasons set forth in this opinion, we grant enforcement of the Board's order.

I

A. *Background*

The Company produces tortillas and other Mexican food products. It maintains two plants in Chicago, one located on 18th Street and the other on 27th Street. On December 22, 1982, pursuant to a petition of the Union, the Regional Director of the NLRB conducted a representation election in a bargaining unit that consisted of production and maintenance employees at the two plants. The tally of ballots showed that 38 votes were cast for the Union; two votes were cast for Local 301 of the International Brotherhood of General Workers; and 23 votes were cast for no union. Initially, 27 ballots were challenged, a number sufficient to affect the election results. After the Regional Director directed a hearing to resolve the Company's objections to the election, representatives of the Union, the Company and the Regional Director entered into a stipulation sustaining challenges to 15 ballots. As a result, 12 votes remained challenged. Because this number was insufficient to affect the results of the election, the challenges were not resolved. The Union then held a majority of the valid votes cast.

On February 3, 1983, the Regional Director consolidated the election objections with an unfair labor practice case involving the Company's conduct during the period immediately before the election. In a separate decision, *NLRB v. Del Rey Tortilleria,*

* The Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, sitting     by designation.

*Inc.,* 787 F.2d 1118 (7th Cir.1986), this court enforced the Board's order with respect to the pre-election unfair labor practice charge. We held that there was substantial evidence to support the Board's finding that the Company responded to the Union election campaign with coercive tactics, including unlawful promises, threats, coercive interrogation, and retaliatory measures such as discriminatory discharge of three employees.

At this point in the litigation, the only remaining issue is the Company's complaint that, while the polls were opened, the Union's regional director of organizing, Rudolfo Lozano, electioneered at or near the polling areas.

### B. *Hearing Before the Administrative Law Judge on the Election Objection*

#### 1. The Polling Set-Up

In the hearing on the Company's electioneering objection, the evidence presented to the administrative law judge (ALJ) established that two voting sessions were conducted by the Board agent at each plant. At the 18th Street plant, polling took place from 4:30 a.m. to 5:15 a.m. and from 12:45 p.m. to 1:30 p.m. At the 27th Street plant, balloting took place from 11:30 a.m. to 12:15 p.m. and from 8:30 p.m. to 9:15 p.m.

At the 27th Street plant, the polling place was located within the plant. Approximately two-thirds of the voters went to the polling areas directly from their work stations within the plant and therefore were not exposed to the union campaigning on the sidewalk. Those workers who came to the plant from their homes or other locations entered the plant from the public sidewalk through a set of double doors. Six feet from the front entrance of the plant, they passed through a second set of double doors; after passage through this second set of doors, they had to walk fifteen feet down a corridor to the cafeteria that served as the balloting place. The voting area was about twenty-one feet from the public sidewalk.

At the 18th Street plant, the balloting was conducted on the second floor of the plant. Those workers who came to the balloting place from their work stations throughout the plant did not, of course, see the union organizer on the sidewalk. Those voters who came from outside the plant walked up several steps from the sidewalk, passed through a set of double doors and then entered a small room. This room was used by the Company to sell tortillas to the public. The workers then climbed a set of stairs to the second floor of the plant. The voting area was approximately three feet further on the second floor. This second floor voting area was approximately twenty feet from the outside sidewalk. Respondent's App. at 25–29.

#### 2. The Precluded Evidence and Subsequent Offer of Proof

The Company sought to introduce evidence that, during the voting hours, Mr. Lozano improperly electioneered at or near the polling areas. However, when the attorney for the Company sought to introduce this evidence through the testimony of another Company attorney, Steven Loren, the ALJ refused to allow the testimony because Mr. Loren had breached the ALJ's sequestration order. However, the ALJ did permit the Company's attorney to make an offer of proof. With respect to the first voting session at the 27th Street plant, the Company made the following offer of proof:

> After the preliminaries were ended and the voting period was to begin, Steve Loren left the building with [supervisor] Sergio Ramirez. He went across the street from the building, about 50 feet away from the entrance to Del Rey.
>
> Mr. Loren then noticed that several people began lining up outside the building. He saw Rudy Lozano and one person—another person who was with him—who had been with him previously—talking to the employees who began lining up outside the building.
>
> The employees were waiting in line for about three to five minutes because apparently the voting period had not yet started.

Mr. Lozano was talking to them all that time. After that the polls opened, and about 15 people went in to vote. Mr. Lozano stayed a few feet away from the entrance, and as other people came to vote, he approached them and talked to them for several minutes. He was there with one other person who Mr. Loren believes was Jesus Macias.

He did not—he has no idea what was said between Mr. Lozano and the employees—and he estimates that he stopped several people as they came to the facility and talked to them.

The people who he had talked to, went into the building and came out several minutes later. They were not carrying merchandise with them, as they left. And as they left Mr. Lozano approached them again and talked to them.

All during this time Mr. Loren was about 50 feet away from the building. About—Mr. Loren saw Mr. Lozano talk to the first group of employees that were lined up outside, which consisted of about 15 people, and ... then he talked to those people for about two to five minutes, before they went into the facility.

As far as the other people who came in after that, his best recollection is that seven or eight went into the 27th Street building during that period, and that Mr. Lozano approached each one.

Respondent's App. at 55–57.

As to the second voting session at the 18th Street plant, the Company offered to prove that Mr. Loren would testify that Mr. Lozano stopped five or six employees as they approached the building. He would testify, it was asserted, that Mr. Lozano spoke with these employees for a few minutes. He would also testify that, when these employees left the building after they had cast their votes, Mr. Lozano shook their hands and spoke to them briefly. *Id.* at 58. With respect to the second session at the 27th Street plant, the Company offered to prove that Mr. Loren would testify that Mr. Lozano spoke briefly to one employee who arrived to vote as she entered the building. *Id.* at 59.

### 3. The Conclusions of the Administrative Law Judge and the Board

On the basis of this submission, the ALJ concluded that Mr. Lozano:

did not position himself during the election at or near the polling places, both of which were well inside the plant buildings. There is no credible evidence in the record that he spoke to off-duty employees as they entered, with the sole exception of Nava.[1] His casual remarks to Nava occurred before the polls opened, at a time when Lozano was waiting to inspect the polling place on 18th Street to see that it was in order for the second session of the election at that location.

*Del Rey Tortilleria, Inc.,* 272 NLRB 1108, 1116 (1983) [hereinafter cited as ALJ Decision].

On November 14, 1984, the NLRB, in reviewing the decision of the ALJ, did not address squarely whether the ALJ correctly excluded the testimony of Mr. Loren. Rather, it found that the matter set forth in the offer of proof, if found to be true and considered in the light most favorable to the respondent, would not support the respondent's allegations. *Del Rey Tortilleria, Inc.,* 272 NLRB 1106, 1106 (1984). Emphasizing that there was no evidence

---

**1.** Ramiro Nava, an employee at the 18th Street facility, testified that at approximately 1:00 p.m. while he was off-duty, he went to the 18th Street plant to vote. Mr. Lozano was standing approximately ten feet from the plant's entrance. Mr. Nava testified that as he approached the entrance, he was stopped by Mr. Lozano, who spoke with him for five minutes, urging him to vote for the Union. After this conversation, Mr. Nava voted. As he left the building, Mr. Lozano stopped him again and asked for whom he had voted. Mr. Nava further testified that Mr. Loza-no had spoken briefly to other employees as they approached the entrance and as they left. Respondent's App. at 13–23, 30–33. Mr. Nava's testimony was contradicted by Mr. Lozano, who stated that he merely greeted Mr. Nava and said "don't forget to vote." The ALJ credited Mr. Lozano's testimony because he found that comments made by the Company's supervisor, Mrs. de la Torre, from the counsel table during Mr. Nava's testimony affected Mr. Nava's credibility. *Del Rey Tortilleria, Inc.,* 272 NLRB 1108, 1113 & n. 18 (1983).

that Mr. Lozano had spoken with employees waiting in line to vote and that Mr. Loren had failed to complain immediately to the Board agent about Mr. Lozano's activity, the Board relied on its holding in *Boston Insulated Wire & Cable Co.*, 259 NLRB 1118, 1118–19 (1982), *aff'd*, 264 NLRB 44 (1982), *enforced*, 703 F.2d 876 (5th Cir.1983):

> When faced with evidence of impermissible electioneering, the Board determines whether the conduct, under the circumstances, "is sufficient to warrant an inference that it interfered with the free choice of the voters." This determination involves a number of factors. The Board considers not only whether the conduct occurred within or near the polling place, but also the extent and nature of the alleged electioneering, and whether it is conducted by a party to the election or by employees. The Board has also relied on whether the electioneering is conducted within a designated "no electioneering" area or contrary to the instructions of the Board agent.

*Del Rey Tortilleria, Inc.*, 272 NLRB at 1107 (quoting *Star Expansion Enter.*, 170 NLRB 364, 365 (1968)) (footnotes omitted). Therefore, with relatively minor exceptions not relevant here, the Board adopted the ALJ's order.

### C. *Unfair Labor Practice Charge—Failure to Bargain*

On February 1, 1985, the Union asked the Company to recognize it as the employees' exclusive bargaining agent, to bargain, to provide a list of unit employees' pay rates and job classifications, and to provide a description of employees' fringe benefits. Three days later, on February 4, 1985, the Company refused to meet the Union's demands on the ground that the Union was not properly certified because Mr. Lozano had electioneered at or near the polling areas. On February 27, 1985, the General Counsel of the NLRB issued a complaint against the Company alleging that it had violated section 8(a)(1) and (5) of the Act. On May 20, 1985, the General Counsel filed a motion for summary judgment. The Board transferred the proceeding to itself.

On August 23, 1985, the Board issued its decision and order and found that, since February 4, 1985, the Company had been violating section 8(a)(1) and (5) of the Act by refusing to bargain with the Union and by refusing to provide the Union with relevant information needed to function as the employees' exclusive bargaining agent. The Board specifically noted that "[a]ll issues raised by the Company were or could have been litigated in the prior representation proceeding. The Company does not offer to adduce at a hearing any newly discovered and previously unavailable evidence, nor does it allege any special circumstances that would require the Board to reexamine the decision made in the representation proceeding." *Del Rey Tortilleria, Inc.*, 275 N.L.R.B. No. 211 at 4 (Aug. 23, 1985) (footnote omitted). The Board ordered the Company to cease and desist from engaging in violations that interfered with the employees' exercise of their section 7 rights. It also ordered the Company to bargain with the Union on request. If an understanding was reached, the Company was to embody that understanding in a signed agreement. The Company was also ordered to provide the Union with necessary and relevant information requested on February 1, 1985 and to post an appropriate notice. Furthermore, the Board stated that it would construe the initial certification year as beginning on the date the Company began to bargain in good faith. *Id.* at 7–8.

### D. *Contentions of the Parties*

Before this court, the Company submits that the ALJ committed plain error in the original election proceeding by barring the testimony of Mr. Loren. The Company further argues that the Board departed from the standards enunciated in *Milchem, Inc.*, 170 NLRB 362 (1968). The proffered testimony of Mr. Loren would establish, argues the Company, that the Union agent engaged in "electioneering [which] was far more pervasive and sustained than the union agent's in *Milchem*. Not only did Lozano talk to the voters waiting in line, but throughout the voting periods he also ac-

costed at least a dozen or more off-duty employees as they individually arrived at the 27th and 18th Street plant entrances to vote, and engaged each of them in conversations lasting several minutes." Respondent's Br. at 21. The Company also submits that the Board's decision in this case is contrary to this court's decision in *Midwest Stock Exch. v. NLRB*, 620 F.2d 629 (7th Cir.), *cert. denied*, 449 U.S. 873, 101 S.Ct. 214, 66 L.Ed.2d 94 (1980).

Noting that the Board did not find it necessary to decide whether the ALJ's exclusion of Mr. Loren's testimony was proper, the General Counsel simply submits that, whatever the merit of the Company's submission in this regard, it cannot show prejudice because the Company's offer of proof, even if considered in the light most favorable to the Company, would not support the Company's allegation that Mr. Lozano's electioneering violated the *Milchem* rule.

On the merits, the General Counsel submits that the Board's proscription of noncoercive electioneering practices is limited in time and place. It applies when the polls are open and employees are either within the polling place, in line waiting to vote, or within a no-electioneering area agreed to by the parties or established by the Board agent conducting the election. The electioneering at issue here occurred in none of those forbidden areas and, in part, occurred before the polls opened. In the view of the General Counsel, therefore, this case involves the application of settled legal principles to undisputed facts.

## II

As a threshold matter, we agree with the Board that it is not necessary to decide whether the exclusion of Mr. Loren's testimony by the ALJ was correct. The detailed proffer of his testimony in the record permitted the Board—and permits this court—to review adequately the merits of the Company's contention. After reading Mr. Loren's submission so as to afford the Company all favorable inferences, we conclude that the Board properly determined that, under the standards established in *Milchem*, the communications at issue here did not violate the Act.

Under the rule in *Milchem*, the Board will normally set aside an election if there are "prolonged conversations between representatives of any party to the election and voters waiting to cast ballots ... without inquiry into the nature of the conversation." *Milchem*, 170 NLRB at 362. In all other situations, the Board must, on the basis of all facts and circumstances, determine whether the electioneering activity "substantially impaired the exercise of free choice so as to require the holding of a new election." *Glacier Packing Co.*, 210 NLRB 571, 573 n. 5 (1974). These rules are designed to ensure that "[t]he final minutes before an employee casts his vote should be his own, as free from interference as possible." *Milchem*, 170 NLRB at 362.

Here, the Board neither departed from the *Milchem* principle nor from the policy concern it was designed to protect. The Union representative, Mr. Lozano, limited his contacts with employees to the public sidewalk, an area that had not been designated as a "no electioneering" zone. While a line formed on the sidewalk at one of the locations, this event occurred before the election period had begun. *See NLRB v. Hudson Oxygen Therapy Sales Co.*, 764 F.2d 729, 732 (9th Cir.1985) ("the *Milchem* rule has been limited to conversations that take place while the polls are open"); *see also NLRB v. Monark Boat Co.*, 713 F.2d 355, 361 (8th Cir.1983). Just as importantly, both polling places were not only a significant distance from the sidewalk, but also isolated from the influence of Mr. Lozano's activity on the street by two sets of doors. *See Boston Insulated Wire & Cable Sys., Inc. v. NLRB*, 703 F.2d 876, 881 & n. 6 (5th Cir.1983). The employees were therefore assured that the "final minutes" would be free of external pressure.

The respondent contends that Mr. Lozano's activities in this case constituted violations of the *Milchem* rule similar to those raised in *Midwest Stock Exch. v. NLRB*, 620 F.2d 629 (7th Cir.), *cert. denied*, 449 U.S. 873, 101 S.Ct. 214, 66 L.Ed.2d 94

(1980), *NLRB v. Carroll Contracting & Ready-Mix, Inc.*, 636 F.2d 111 (5th Cir. 1981), and *Jamesway Corp. v. NLRB*, 676 F.2d 63 (3d Cir.1982). Yet all of these cases present situations significantly different from this case. For example, in *Midwest Stock Exch.*, this court denied enforcement of a Board order certifying a union as the bargaining representative because, while the polls were open, the union observer engaged in several conversations, one of which lasted five minutes, with voters while they were standing in line immediately outside the polling area waiting to vote. 620 F.2d at 633–34. Similarly, in *Carroll Contracting*, the electioneering occurred in a parking lot where as many as forty-five employees stood in line waiting to vote. As the Fifth Circuit stated, "[o]nce the polls opened, the employees waiting outside in line to vote became a part of the polling place, and were entitled to the safeguards against interference espoused by *Milchem.*" *Carroll Contracting*, 636 F.2d at 113. As noted by the Board, in this case, unlike *Carroll Contracting*, "the Respondent's offer of proof does not state [that] Lozano spoke with employees waiting in a line extending outside from the polling area during the polling period. At most, it indicates employees formed a line to enter the building and to proceed to the polling place." 272 NLRB at 1107–08. In *Jamesway Corp.*, unlike this case, a union organizer was stationed along the main aisle of the store approximately 15–20 feet from the polls. The organizer was observed speaking with employees loudly enough to be heard by voters while they were casting their ballots. The Third Circuit, while deciding the case on other grounds, commented that the organizer's presence "might require setting aside an election in favor of the offending party." *Jamesway Corp.*, 676 F.2d at 73 n. 13. Because Mr. Lozano's activity in this

case was limited to an area removed from the polls and was not directed at voters waiting in line to cast ballots while the polls were open, we conclude that the Board properly applied the *Milchem* rule to the facts of this case.[2]

### Conclusion

The Board's decision in this case is an even-handed application of a settled principle of law. Substantial evidence in the record supports its decision. *See NLRB v. Affiliated Midwest Hosp., Inc.*, 789 F.2d 524, 527 (7th Cir.1986); *Mosey Mfg. Co. v. NLRB*, 701 F.2d 610, 614–15 (7th Cir.1983). Accordingly, the order of the National Labor Relations Board is enforced.

ENFORCED.

---

2. In assessing all of the facts and circumstances surrounding the election, the Board also noted that, throughout the election, Mr. Loren never complained to the Board agent about Mr. Lozano's activities—despite the explicit notice in the Board's notice of election that violations of election rules "should be reported immediately to the Regional Director or the agent in charge of

the election." *Del Rey Tortilleria, Inc.*, 272 NLRB 1106, 1107 (1984).