**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CARROLL CONTRACTING AND READY–MIX, INC., Respondent.**

No. 80–5315.

United States Court of Appeals, Fifth Circuit. Unit B

Feb. 5, 1981.

Elliott Moore, Deputy Associate Gen. Counsel, Lafe E. Solomon, Atty., NLRB, Washington, D. C., for petitioner.

Alley & Alley, John Edward Alley, Robert D. Hall, Jr., Michael R. Miller, Tampa, Fla., for respondent.

Before KRAVITCH and FRANK M. JOHNSON, Jr., Circuit Judges, and ALLGOOD,* District Judge.

ALLGOOD, District Judge:

The National Labor Relations Board seeks enforcement of its order issued against Carroll Contracting and Ready–Mix, Inc., wherein Carroll was ordered to bargain on request with the certified representative of its employees.

Carroll, a Florida corporation, is engaged in the wholesale and retail sale and distribution of concrete and asphalt products. In July, 1978, the Teamsters, Chauffeurs, Warehousemen and Helpers Local No. 385 petitioned to represent Carroll's production and maintenance employees. A stipulation for certification upon consent election was thereafter entered into scheduling an election and defining the appropriate unit. A secret ballot election was held on August 28, 1978. The union won by a vote of 55 to 44, with 13 challenged ballots and two void ballots. Carroll timely filed 24 objections to conduct allegedly affecting the results of the election. The Regional Director of the Board conducted an ex parte investigation, and Carroll was given an opportunity to present evidence. Subsequently, a report was issued by the Regional Director recommending that three of the challenged ballots be sustained; that Carroll's objections be overruled in their entirety; and that the union be certified. Exceptions were then filed by Carroll requesting that the election be set aside, or in the alternative, that an evidentiary hearing be held. These requests were denied by the Board when it adopted the Regional Director's findings, and the union was certified as the bargaining representative of Carroll's production and maintenance employees. In order to test the validity of the certification, Carroll refused to bargain with the union. Consequently, the union filed unfair labor practice charges against Carroll. A complaint was then issued against Carroll by the Board's General Counsel alleging a violation of Section 8(a)(5) and (1) of the National Labor Relations Act.[1] Carroll answered and the General Counsel moved for summary judgment. A show cause order was issued to which Carroll responded with a motion in opposition to summary judgment. On February 6, 1980, the Board issued its decision and order granting summary judgment and finding Carroll in violation of Section 8(a)(5) and (1) of the Act. Carroll was ordered to cease and desist from the unfair labor practices; to bargain with the union on request; and to post an appropriate notice. The Board now seeks enforcement of its order.

Among Carroll's 24 objections to conduct affecting the results of the election was alleged improper electioneering, and it is upon that objection that this case turns. The undisputed evidence revealed that before the polls opened, two former Carroll employees wearing "Vote Teamsters" signs on their hats and enlarged reproductions of the ballot with an "X" marked in the "Yes" box pinned on their shirts, positioned themselves in the parking lot where the line of waiting voters formed. This line was approximately 25 feet from the polls. At one time there were as many as 45 employees waiting to vote. As the line of voters passed them by, both men urged the employees to vote for the union and repeatedly gestured to the "Yes" box on the ballot

---

* District Judge of the Northern District of Alabama, sitting by designation.

1. Section 8

    (a) It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7;

         *    *    *    *    *    *

    (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of Sec. 9(a).

    [29 U.S.C. § 158(a)(1) and (5)].

pinned to their shirt. These activities continued throughout the polling hours.

At the pre-election conference, the electioneering in the parking lot was brought to the attention of the Board agent. She stated, however, that she could only control electioneering within the polling place.

The Board set out its policy regarding electioneering in *Claussen Baking Company*, 134 NLRB 111 (1961). In *Claussen*, the electioneering took place 15 feet from the polling place and only continued for 15 minutes, at which time it was terminated by the Board agent. Setting the election aside, the Board stated:

> It is the province of the Board to safeguard its elections from conduct which inhibits the free choice of the voters, and the Board is especially zealous in preventing intrusions upon the actual conduct of its elections. In furtherance of this responsibility, *the Board prohibits electioneering at or near the polls.*

134 NLRB at 112. (Emphasis added).

The Board further defined its electioneering policy in the oft cited *Milchem, Inc.*, 170 NLRB 362 (1968), where it stated that elections would be overturned where representatives of any party to the election engaged in "prolonged" conversations with voters waiting to cast their ballots, regardless of the content of the conversation. The Board articulated that the potential for distraction, last minute electioneering, and unfair advantage justified a "strict rule" against such conduct, without requiring an examination into the substance or effect of the conversations. *General Shoe Corp.*, 77 NLRB 124, 127 (1948).

■ This court reiterated that standard in *Home Town Foods, Inc. v. NLRB*, 416 F.2d 392 (5th Cir. 1969). The "laboratory conditions" test represents an ideal atmosphere in which a free choice may be made by employees, protected from interference by employer, union, Board agent, or other parties. 416 F.2d at 396. *Cf. NLRB v. Lake Butler Apparel Co.*, 392 F.2d 76, 82 (5th Cir. 1968). The Board contends that the electioneering which occurred was not improper inasmuch as the two former Car-

roll employees were not agents of the union, and thus their conduct could not be attributed to the union. We disagree. It is well settled that acts not attributable to the union warrant setting aside the election if the acts disrupted the voting procedure or destroyed the atmosphere necessary to the exercise of a free choice in the representation election. *NLRB v. Claxton Manufacturing Co.*, 613 F.2d 1364, 1371 (5th Cir. 1980). In *Home Town Foods, Inc. v. NLRB*, 379 F.2d 241 (5th Cir. 1967), this court stated:

> We are not impressed with the argument that all coercive acts must be shown to be attributable to the union itself, rather than to the rank and file of its supporters. "The important fact is that such conditions existed and that a free election is hereby rendered impossible." *Diamond State Poultry Co.*, 107 NLRB 3, 6 (1953).

379 F.2d at 244.

■ The Board further argues that the electioneering was not improper because it occurred *outside* the polling place. We are not convinced. As stated by the Board in *Milchem*, the last few moments before voting should be the voters own, "as free from interference as possible." 170 NLRB at 362–363. We do not find that this protection from interference is reserved for only those employees who have gained access to the actual polling place to cast their vote. Once the polls opened, the employees waiting outside in line to vote became a part of the polling place, and were entitled to the safeguards against interference espoused by *Milchem*.

■ We have held that where the Board promulgates a standard governing conduct under the Act, "such policies are controlling until the Board announces a change and its reasons for the change." *Delta Drilling Co. v. NLRB*, 406 F.2d 109, 113 (5th Cir. 1969); *NLRB v. Osborn Transp., Inc.*, 589 F.2d 1275 (5th Cir. 1979). Since in *Claussen* the Board has prohibited electioneering "at or near the polls", we must set aside the election and enforcement of the Board's order is denied.

ENFORCEMENT DENIED.