**EDS–IDAB, INC., Petitioner, Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.**

No. 80–5785.

United States Court of Appeals, Fifth Circuit.*
Unit B

Feb. 4, 1982.

12. *See* note 6 *supra.*

13. *See* note 5 *supra.*

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Mershon, Sawyer, Johnston, Dunwoody & Cole, William R. Radford, John B. Gallagher, Miami, Fla., for petitioner, cross-respondent.

Elliott Moore, Deputy Associate Gen. Counsel, Lee W. Jackson, Atty., NLRB, Washington, D. C., for respondent, cross-petitioner.

Before MORGAN, TJOFLAT and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

The petitioner, EDS–IDAB, Inc. (herein referred to as the "Company"), filed its petition seeking review in this court of the order of the National Labor Relations Board (herein referred to as the "Board") ordering the Company to bargain with International Association of Machinists and Aerospace Workers, AFL–CIO (herein referred to as the "Union"). The Board filed a cross-application seeking enforcement of its order. We deny enforcement, and remand for a hearing.

The Board conducted an election among the employees of the Company, which resulted in 44 ballots cast for the Union and 37 against. There were two challenged ballots, but no action was taken with respect to the challenged ballots because they were insufficient in number to affect the results of the election. The Company filed timely objections to the election. The Regional Director for the appropriate region of the

Board conducted an ex parte investigation, and rendered his report concluding that the Company's objections were without merit and recommended that they be overruled. No hearing was held. The Company filed timely exceptions to the Regional Director's report and requested the Board to either set aside the election or order the Regional Director to conduct a hearing. The Board adopted the Regional Director's findings and recommendations and certified the Union. In order to secure judicial review of alleged misconduct during and preceding the election, the Company refused to bargain, and in the proceedings that followed, the Board granted summary judgment ordering the Company to bargain with the Union, which order is now before us for review.

The Company argues that the election should be set aside because of certain improper electioneering and certain pre-election threats and violence. In the alternative the Company argues that the Regional Director should have held an evidentiary hearing because the Company raised substantial and material issues of fact with respect to improper electioneering and pre-election threats and violence. We decline to set aside the election, but we agree that a full hearing was required and therefore we deny enforcement of the Board's order and remand for a hearing.

The following issues merit some discussion: (1) whether a hearing was required because the Company presented specific evidence of threats and violence which raises substantial and material issues of fact as to whether such threats and violence were sufficient to destroy the atmosphere necessary to the exercise of a free choice in the election; (2) whether the Regional Director, in considering whether the Company made a sufficient showing to be entitled to an evi-

dentiary hearing, could properly disregard evidence of threats and violence solely because of the hearsay form of the evidence; and (3) whether a hearing was required because the Company presented specific evidence of improper electioneering which, when considered cumulatively with the evidence of threats and violence, raises substantial and material issues of fact as to whether the atmosphere necessary to the exercise of a free choice was destroyed.[1]

The relevant facts will be stated with our discussion of each issue.

### 1. *Atmosphere of Fear and Coercion*

■ We consider first the Company's argument that the Board improperly declined to order a hearing on the factual issues relating to the threats and acts of violence asserted in the Company's affidavits. In a recent and very similar case, *NLRB v. Claxton Mfg. Co., Inc.*, 613 F.2d 1364 (5th Cir.), *clarified* 618 F.2d 396 (1980), we carefully enunciated the appropriate standards to be applied in determining whether a hearing is required in a case such as this. Applying those standards, which we need not repeat here, we conclude that a hearing was clearly required in the instant case.

Stated briefly, the Company's affidavits included testimony of two witnesses, Hall and Vigil, that employee Contreras came to them in fear because of a threat. Contreras said to the witnesses that a pro-union employee had lifted up his shirt to reveal a gun and threatened: "If the union doesn't get in, you'll get yours after the election and Julio Blanco is going to get his too." This incident was confirmed by the affidavit of another witness, Carmanate, who swore that Contreras telephoned him in fear reporting the same incident. The incident is also confirmed by subsequent conversations in which Contreras confided in

**1.** The Company argues alternatively that error was committed when the Regional Director failed to transmit to the Board, as part of the record to be reviewed by the Board, the affidavits taken during the Regional Director's ex parte investigation. Although our recent decision in *N. L. R. B. v. Klinger Electric Corp.*, 656 F.2d 76, (5th Cir. 1981), would seem to support the Company's argument that the Board's regulation, 29 C.F.R. § 102.69(g), requires that such affidavits be made part of the record, we need not address the issue because of our decision to remand for a hearing and because the issue is not likely to arise again in further proceedings in this case.

Vigil his fear of retaliation against him for having reported the incident to the Company.

Another incident involving Contreras was mentioned in the affidavit of witness Medina. Medina said that an employee had told him that pro-union employee Jorge had punched Contreras in the eye. Medina then saw that Contreras did in fact have a black eye, and asked Jorge about the incident. Jorge did not deny the incident, but claimed it was an accident.

The witness Vigil also testified concerning threats to two additional employees, Freyre and Alimany. After hearing rumors of threats to Freyre and Alimany, Vigil was assigned by the Company to investigate. During the investigation, Freyre told Vigil that he was upset with some employees who had been harrassing others to vote for the Union. Freyre also told Vigil: "Off the record—I will never tell anyone about the threats to me or others because I have to come back and work with these guys every day." Vigil's affidavit indicates that Alimany told him essentially the same thing.

In addition, there was evidence that an employee's tire was spiked, and there was evidence of rumors concerning the above-mentioned and other incidents sufficient to raise a substantial issue as to whether there was widespread knowledge of the threats amongst the employees.

We conclude that the Company's prima facie evidence related to specific events and specific people and raised substantial and material issues of fact as to whether the threats and violence were sufficient to destroy the atmosphere necessary to the exercise of a free choice in the election. *NLRB v. Claxton Mfg. Co., Inc., supra.* Accordingly, we conclude that a hearing was required.

### 2. *Hearsay*

The Board argues that the Regional Director properly discounted much of the foregoing evidence of threats and violence because of its hearsay nature. In support of its contention that hearsay is properly discounted, the Board cites *NLRB v. O.K. Van Storage, Inc.,* 297 F.2d 74 (5th Cir. 1961), *United States Rubber Co. v. NLRB,* 373 F.2d 602 (5th Cir. 1967), and *NLRB v. Sauk Valley Manufacturing Co., Inc.,* 486 F.2d 1127 (9th Cir. 1973). The Board's reliance upon each case is misplaced. The *O.K. Van Storage* case contains only dictum suggesting that the hearsay status of evidence at this stage of proceedings to set aside an election makes the competence of such evidence doubtful. Similarly, *United States Rubber Co.* contains only dictum suggesting that *equivocal* hearsay might not be competent evidence at this stage. The Ninth Circuit *Sauk Valley Manufacturing Co.* case is also dictum indicating that hearsay, the credibility of which is questionable, might properly be discounted. The dicta in the two Fifth Circuit cases is, of course, not binding upon us. We note also that in each case, the dicta is hardly more than a passing reference, and thus is entitled to very little persuasive force.[2]

The parties have cited no Fifth Circuit cases squarely addressing the hearsay issue before us, and our research has uncovered none.[3] Recognition of the posture of this case will facilitate a proper resolution of this question. The Company was required to, and did, file an objection to the election within five days after the tally of the ballots. The objection properly contained only a short statement of the conduct which allegedly affected the outcome of the election, and was supported by affidavits. The hearsay at issue here appears in the affidavits submitted by the Company. A party objecting to an election, whether that party be the Company or the

**2.** *See also NLRB v. Claxton Mfg. Co., Inc.,* 613 F.2d 1364, 1370 n.9 (5th Cir. 1980) (possible implication in dictum that hearsay rule has no application at this stage of proceedings to challenge an election).

**3.** In *NLRB v. Golden Age Beverage Company,* 415 F.2d 26, 30 (5th Cir. 1969), this court apparently considered hearsay evidence at this stage of proceedings to set aside an election. However, there was no discussion of the issue.

Union, must rely upon the *voluntary* cooperation of witnesses at this stage of the proceedings. *NLRB v. Nixon Gear, Inc.*, 649 F.2d 906, 913 (2nd Cir. 1981). It is apparent that such voluntary cooperation often will be difficult or impossible to obtain. Either an objecting employer or an objecting union might find considerable resistance among employees fearful of alienating their employer or union, in either event fearful of jeopardizing their jobs. Voluntary cooperation is especially doubtful in the instant case where there are substantial and material issues of fact relating to alleged threats and violence. Indeed, the Regional Director in this case found Contreras unwilling to confirm or deny the alleged threat to him. Another alleged victim of threats interviewed during the Regional Director's ex parte investigation denied any threats to himself, but admitted hearing rumors of threats and refused to testify as to the nature of the threats. The record in this case suggests that at least three potential witnesses, Contreras, Freyre and Alimany, were reluctant to cooperate for fear of retaliation by the Union. Had a hearing been ordered, the Company could have subpoenaed these witnesses, thus avoiding the problems relating to voluntary cooperation. In addition to alleviating the voluntary cooperation problem, a hearing would eliminate the hearsay problem. While Contreras, Freyre and Alimany are hearsay declarants in the affidavits, their testimony as witnesses subpoenaed at a hearing of course would not be hearsay.

■ For the foregoing reasons, we conclude that the Regional Director, in considering whether the Company has made a sufficient showing to be entitled to a hearing, was not authorized to refuse to consider the Company's affidavits solely on the basis of their hearsay nature.[4]

### 3. *Improper Electioneering*

We next consider the Company's argument that alleged improper electioneering raises substantial and material issues of fact as to whether the atmosphere necessary to the exercise of a free choice was destroyed.

■■ The standard to be applied is well-established. An election will be set aside where representatives of any party to an election engaged in "prolonged" conversations with voters waiting to cast their ballots, regardless of the content of such conversations. There is a strict rule against such conduct. *NLRB v. Carroll Contracting & Ready-Mix, Inc.*, 636 F.2d 111, 113 (5th Cir. 1981); *Milchem, Inc.*, 170 NLRB 362 (1968). However, where the improper conduct is not that of agents of one of the parties, then such conduct will warrant setting aside an election if the acts disrupt the voting procedure or destroy the atmosphere necessary to the exercise of a free choice in the election. *NLRB v. Carroll Contracting & Ready-Mix, Inc.*, 636 F.2d at 113.

■ Applying the above standards to the facts of this case, we conclude that there are substantial and material issues of fact as to whether the electioneering conduct of Jorge, considered cumulatively with the showing of threats and violence, was sufficient to destroy the atmosphere necessary to the exercise of a free choice in the election.

The Company's affidavits include the testimony of an employee who observed Jorge vote, and then sit approximately two feet from the Union observer's table for ten to fifteen minutes. This would place Jorge about seven to eight feet from the line of voters. The witness also saw Jorge talking to the union observer and to voters, but could not hear the content of what he said. The witness also testified that Jorge had a Union patch on the front of his overalls and a big triangular Union patch on the back. Another witness said that Jorge was sitting there in front of the voters for a good half hour. The Company's affidavits also con-

---

**4.** We note that both the Second and the Third Circuits have reached the same conclusion. *NLRB v. Nixon Gear, Inc.*, 649 F.2d 906, 913 (2nd Cir. 1981); *Anchor Inns, Inc. v. NLRB*, 644 F.2d 292, 297–98 (3rd Cir. 1981); *Vitek Electronics, Inc. v. NLRB*, 653 F.2d 785, 794–95 (3rd Cir. 1981).

tain evidence that Jorge punched Contreras in the eye, and evidence that rumors were abroad that Jorge was threatening other employees with physical harm, either to themselves or their property.

Our opinion in *NLRB v. Carroll Contracting & Ready-Mix, Inc., supra,* is instructive in ascertaining the nature of improper electioneering conduct that will be deemed sufficient to constitute an atmosphere undermining an election such that the election must be set aside. There, two former employees wearing pro-union signs and an enlarged reproduction of the ballot, marked yes, positioned themselves in a parking lot where the line of voters formed. The *Carroll* case does not control the instant case because the employer's affidavits there established that the two employees urged voters to vote for the union, whereas in the instant case, the Company's affidavits do not establish the content of Jorge's conversations with voters. We need not decide whether Jorge's alleged electioneering conduct in the instant case, considered in isolation, would be sufficient to destroy the atmosphere necessary to the exercise of free choice, because we are satisfied that this conduct, when considered cumulatively with the allegations of threats and violence, is sufficient to raise substantial and material issues of fact as to whether the atmosphere necessary to the exercise of free choice was destroyed.[5] In light of the evidence of Jorge's activities at the polling place and the evidence linking Jorge to threats and violence, we conclude that Jorge's improper electioneering conduct at the polling place should be considered cumulatively with the issue of the threats and violence at a full hearing on remand.[6]

We also conclude that there is a substantial issue of fact as to whether

Jorge's electioneering conduct was condoned by the Union, and that this issue should also be explored at the hearing on remand. *See NLRB v. Golden Age Beverage Company,* 415 F.2d 26, 32, n. 5 (5th Cir. 1969). The Company's evidence suggests that Jorge sat next to the Union observer for ten to fifteen minutes during the balloting and talked to him. The evidence also linked Jorge to the alleged threats of Union retaliation and to alleged violence. If Jorge's conduct was condoned by the Union, then the standard against which it is to be tested is more stringent. *NLRB v. Carroll Contracting & Ready-Mix, Inc.,* 636 F.2d at 113.

Enforcement DENIED. Case REMANDED.

---

**5.** We have held that such conduct should be considered cumulatively at a full hearing. *NLRB v. Carlton McLendon Furniture Co., Inc.,* 488 F.2d 58, 64 (5th Cir. 1974); *Home Town Foods, Inc. v. NLRB,* 416 F.2d 392, 397 (5th Cir. 1969).

**6.** The Company also objects to the fact that the Union observer, Gonzalez, wore a Union badge bearing the words "VOTE YES—FOR IAM."

Although such conduct, considered in isolation, will not ordinarily be sufficient to invalidate an election, *NLRB v. Laney & Duke Storage Warehouse Co.,* 369 F.2d 859, 864–65 (5th Cir. 1966), it should be considered along with Jorge's electioneering conduct at the hearing.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.