28 F.3d 1210
 146 L.R.R.M. (BNA) 3088
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
RHEEM MFG COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
UNITED STEELWORKERS of America, AFL-CIO-CLC, Intervenor.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
RHEEM MFG COMPANY, Respondent,
UNITED STEELWORKERS of America, AFL-CIO-CLC, Intervenor.
 Nos. 93-1368, 93-1498.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 14, 1994.
Decided: June 30, 1994.
 
 On Petition for Review and Cross-application for Enforcement of an Order of the National Labor Relations Board. (10-CA-26383)
 Donnie Gerald Coker, Ford & Harrison, Atlanta, Georgia, for Petitioner.
 Richard A. Cohen, National Labor Relations Board, Washington, D.C., for Respondent.
 Jeremiah Andrew Collins, Bredhoff & Kaiser, Washington, D.C., for Intervenor.
 Jerry M. Hunter, General Counsel, Yvonne T. Dixon, Acting Deputy Attorney General, Nicholas E. Karatinos, Acting Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Peter Winkler, Supervisory Attorney, National Labor Relations Board, Washington, D.C., for Respondent.
 
 
 1
 Andrew D. Roth, Bredhoff & Kaiser, Washington, D.C.; Richard J. Brean, United Steelworkers of America, Pittsburgh, Pennsylvania; Samuel H. Heldman, Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, Alabama, for Intervenor.
 
 NLRB
 
 2
 PETITION DENIED AND ORDER ENFORCED.
 
 
 3
 Before ERVIN, Chief Judge, SPROUSE, Senior Circuit Judge, and HARVEY, Senior United States District Judge for the District of Maryland, sitting by designation.
 
 OPINION
 PER CURIAM:
 
 4
 In an election supervised by the National Labor Relations Board, the United Steelworkers of America ("the Union") was elected as the collective bargaining representative for employees at the Rheem Manufacturing Company plant in Milledgeville, Georgia. Rheem's objections to the election were overruled by the Board, and the Union was certified as the exclusive bargaining agent for the designated unit. The company refused to bargain with the Union and the Board's General Counsel issued a complaint alleging violation of section 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C.Sec. 158(a)(5) and (1). The Board ultimately ordered Rheem to recognize and bargain with the Union. The company filed this petition for review, and the Board applied for enforcement of its order. We deny the petition for review and grant enforcement.
 
 
 5
 The core issue on review is whether the Board erred in refusing to recognize Rheem's objection to the election and in certifying the Union. Rheem, in contesting an NLRB conducted election, has a heavy burden. "An election will not be set aside unless the conduct of one of the parties has prevented employees from making their collective desires effective." NLRB v. Manufacturer's Packaging Co., 645 F.2d 223, 225 (4th Cir.1981). The burden is on the objecting party to demonstrate that the election was not fairly conducted. NLRB v. Mattison Machine Works, 365 U.S. 123, 123-124 (1961) (per curiam); Manufacturer's Packing, 645 F.2d at 225. The objecting party must show, by specific evidence, not only that improprieties occurred, but also that they materially affected the results of the election. TRW-United Greenfield Div. v. NLRB, 716 F.2d 1391, 1393 (11th Cir.1983).
 
 
 6
 The Board's findings with respect to the underlying facts are entitled to acceptance if supported by substantial evidence; "[t]he Board's conclusions, based upon inferences drawn from conduct, should not be set aside unless the conclusions transgress the bounds of reasonableness." Manufacturer's Packaging, 645 F.2d at 226.
 
 On appeal, Rheem advances four arguments:
 
 7
 1. The Board agents who handled the election engaged in conduct which conveyed NLRB bias, destroyed all confidence in the election process, and impugned the Board's election standards;
 
 
 8
 2. The required laboratory conditions for a free and fair election were destroyed when employees were subjected to loud and continuous Union electioneering in the voting area;
 
 
 9
 3. The election should have been set aside because an untrue and inflammatory appeal to racial prejudice was disseminated which disrupted the voting procedure and destroyed the atmosphere necessary to the exercise of free choice; and
 
 
 10
 4. Threats by Union representatives and agents destroyed the laboratory conditions required for a fair election.
 
 
 11
 We consider them sequentially.
 
 
 12
 * Rheem contends that the Board erred in not adopting the hearing officer's conclusion that the election should be set aside due to Board agent misconduct. Rheem first points to Board agent Trimble's allowing employees to vote when the polls were closed and the subsequent mishandling of the ballots by Board agents Trimble and Harrison. It stresses that the hearing officer properly concluded that:
 
 
 13
 [T]he receipt by Board Agent Trimble of the three ballots in his hand and the subsequent bantering about of these unprotected ballots between the two Board agents, a shirt pocket, and a briefcase, clearly compromised the integrity of the election process and constituted conduct which would destroy confidence in the Board's election process.
 
 
 14
 Second, Rheem points to Trimble's remarks regarding the heat in the voting room, contending that these remarks constituted suggestions that seeking Union representation was the appropriate means to address concerns about working conditions. Third, Rheem points to Harrison's socializing with Union supporter Mallory as Mallory showed Harrison to his car, and says this constituted improper fraternization, destroyed the integrity and neutrality of the Board's procedures, and was a sufficient basis for setting aside the election. Athbro Precision Eng'g Corp., 166 N.L.R.B. 966 (1967), vacated sub nom., Electrical Workers v. N.L.R.B. 171 N.L.R.B. 21 (1968), enforced, 423 F.2d 573 (1st Cir.1970).
 
 
 15
 In evaluating allegations of an improperly conducted election, the Board's standard is whether "the manner in which the election was conducted raises a reasonable doubt as to the fairness and validity of the election." Polymers, Inc., 174 N.L.R.B. 282, 282 (1969), enforced, 414 F.2d 999 (2d Cir.1969). There is not a "per se rule that representation elections must be set aside following any procedural irregularity." Rochester Joint Board v. NLRB, 896 F.2d 24, 27 (2d Cir.1990). Rather, the issue is whether the conduct in question "tends to destroy confidence in the Board's election process, or ... could reasonably be interpreted as impugning the election standards [the Board] seek[s] to maintain...." Athbro, 166 N.L.R.B. at 966. "The appearance of a compromise of Board neutrality will warrant setting aside an election even if the Board in fact remains neutral." NLRB v. State Plating & Finishing Co., 738 F.2d 733, 740 (6th Cir.1984). The Board recognizes that its representatives must avoid making comments concerning local issues in a campaign. Id . at 739. See also Provincial House, Inc. v. NLRB, 568 F.2d 8, 11 (6th Cir.1977) ("[T]he Board representative, whether inadvertently or not, allowed himself to be used in a manner which seriously affected the neutrality of the Board's procedures....").
 
 
 16
 We agree with the Board that the conduct of its agents here, however, did not compromise the appearance of Board neutrality nor impugn the integrity of the election. Although Trimble's failure to immediately open the ballot box or place the ballots in challenge envelopes was not in conformance with usual Board procedures, Trimble did inform the election observers of his plans so that they could voice objections. The ballots remained in the voting room in the possession of the agents until the parties' representatives arrived, at which point Trimble explained what had occurred. Additionally, the ballots were challenged and therefore did not affect the election results. Trimble's remarks concerning the heat were obviously in jest and made in the presence of only company and union-designated election monitors. As to the employees who saw Mallory and Harrison walking together, there was nothing to indicate that Mallory's actions were anything but incidental to her official duties or otherwise innocently explained.
 
 II
 
 17
 Rheem next argues that, under the apparent authority principles of agency and labor law, Moore and Burnett were agents of the Union, and that their electioneering, which was in the voting area,* constituted objectionable conduct. PPG Indus., Inc. v. NLRB, 671 F.2d 817, 823 (4th Cir.1982); NLRB v. Georgetown Dress Corp., 537 F.2d 1239, 1244 (4th Cir.1976). It is true, of course, that representatives of both the employer and the Union are held to a strict standard in this respect. In Milchem, Inc., 170 N.L.R.B. 362 (1968), for example, the Board set aside an election because of a union representative's conversation with employees who were waiting in line to vote. The Board established the rule: "[T]he potential for distraction, last minute electioneering or pressure, and unfair advantage from prolonged conversations between representatives of any party to the election and voters waiting to cast ballots is of sufficient concern to warrant a strict rule against such conduct, without inquiry into the nature of the conversations." Id. at 362 (emphasis added). It is equally true, however, that in judging the conduct of employees acting as individuals the standard is less strict. Georgetown Dress, 537 F.2d at 1242. As the Fifth Circuit said in EDS-IDAB, Inc. v. NLRB, 666 F.2d 971, 975 (5th Cir.1982):
 
 
 18
 The standard to be applied is well-established. An election will be set aside where representatives of any party to an election engaged in "prolonged" conversations with voters waiting to cast their ballots, regardless of the content of such conversations. There is a strict rule against such conduct. However, where the improper conduct is not that of agents of one of the parties, then such conduct will warrant setting aside an election if the acts disrupt the voting procedure or destroy the atmosphere necessary to the exercise of a free choice in the election.
 
 
 19
 (Citations omitted). The initial inquiry then is whether there was substantial evidence supporting the Board's finding that the offending employees here were not acting as representatives of the Union.
 
 
 20
 The general rule is that apparent authority is created "by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Restatement (Second) of AgencySec. 27 (1958). In the NLRB election context, "[t]he final inquiry[as to whether employees are agents of the Union] is always whether the amount of association between the Union and the [employees] is significant enough to justify charging the Union with the conduct." PPG Indus., 671 F.2d at 822 n. 8. The Union organizing coordinator here encouraged VOC members to wear Union insignia and to talk to other employees on election day, but there is no other evidence to suggest that the employees' electioneering activities were apparently authorized or ratified by the Union. We are persuaded, as was the Board, that the employees engaging in the conduct complained of by Rheem are not to be considered agents of the Union but simply Union partisans whose conduct was inspired by the election.
 
 
 21
 The employees' conduct is, therefore, examined under the rule that electioneering activities by those who are not agents of either party, at or near the polling area, will warrant setting aside an election only if such conduct "disrupt[s] the voting procedure or destroy[s] the atmosphere necessary to the exercise of free choice in the election." EDS-IDAB, 666 F.2d at 975. We agree with the Board that the activities of Moore and Burnett did not upset the voting procedure or destroy the atmosphere necessary for the employees to exercise their free choice in the election. Neither employee engaged in electioneering inside the voting room, and their activities could not be heard inside the voting room. Other employees also campaigned outside the voting room on election day. Therefore, as the Board found, upon entering the voting room, the employees had time to reflect on their voting decision free of interference. See Amalgamated Serv. & Allied Indus. Joint Bd. v. NLRB, 815 F.2d 225 (2d Cir.1987) (election not set aside because employee chanting was not in designated polling area, nor was it directed at employees waiting in line to vote).
 
 III
 
 22
 Rheem next contends that the election should be set aside because a last-minute appeal to racial prejudice destroyed the atmosphere necessary to the employees' exercise of free choice. When employee Karen Roberts, a white woman, came to vote, Union observer Mal lory stated that she was challenging Roberts' vote based upon her (mistaken) belief that Roberts was a supervisor. News of this challenge spread rapidly throughout the company, and the rumor developed that Roberts had been promoted over more senior colleagues (some of whom were black). VOC members were heard discussing the issue in terms of race.
 
 
 23
 While a relevant campaign statement that has racial overtones is not of itself grounds for overturning an election, "an otherwise valid election will be set aside when a party 'deliberately seeks to overstress and exacerbate racial feelings by irrelevant, inflammatory appeals.' " State Bank of India v. NLRB, 808 F.2d 526, 541 (7th Cir.1986) (quoting Sewell Mfg. Co., 138 N.L.R.B. 66, 72 (1962)), cert. denied, 483 U.S. 1005 (1987). An appeal to racial feelings has no "place in a union election if it unduly interferes with holding such an election under 'ideal' or 'laboratory' conditions...." M & M Supermarkets, Inc. v. NLRB, 818 F.2d 1567, 1574 (11th Cir.1987). See Sewell, 138 N.L.R.B. at 69 ("[I]n election proceedings [the Board] seeks 'to provide a laboratory in which an experiment may be conducted, under conditions as nearly ideal as possible, to determine the uninhibited desires of the employees.' ") (quoting General Shoe Corp., 77 N.L.R.B. 124, 127 (1948), enforced, 192 F.2d 504 (6th Cir.1951)).
 
 
 24
 We agree with the Board, however, that the hearing officer reasonably concluded that there was no evidence that the challenge to Roberts was lodged in order to inflame racial prejudice or improperly induce employees to vote against the company. Neither party had made race discrimination an issue during the campaign, and Union observer Mallory had a reasonable suspicion that Roberts had been promoted to supervisor.
 
 IV
 
 25
 Several incidents occurred at the employee entrance to the company that Rheem maintains constituted threats on the part of Union representatives and rendered a fair election impossible. Specifically, three days before the election, Union representative Hower told antiunion employee Janet Kitchen, "Come Tuesday, your ass is mine." (Tuesday was the first workday after the election.) On the day before the election, Hower told anti-union employee Ron Richards that after the election, Richards would be "under his thumb." During the campaign, Union representatives and Union supporters chanted "AntiUnion--Got to go." Union representative Pino Ceneflone made remarks to anti-union employees, such as the Union would "take care of" them, and that they would be the "first to go." VOC members also told anti-union employees that they would be gotten rid of.
 
 
 26
 Rheem contends that the threats by Union representatives destroyed the required laboratory conditions for the election and that the election should therefore be set aside. It claims that the statements were calculated to intimidate and reasonably tended to interfere with employee free choice in the election. The test to be applied in determining whether to set aside an election due to misconduct when threats are made by Union representatives is whether the conduct "reasonably tends to interfere with the employees' free and uncoerced choice in the election." Baja's Place, Inc., 268 N.L.R.B. 868, 869 (1984). However, in order to be objectionable, the threats must be within the Union's power to carry out. Rio de Oro Uranium Mines, Inc., 120 N.L.R.B. 91, 94 (1958).
 
 
 27
 The hearing officer found that the conduct of the Union representatives constituted threats, but that the conduct, individually or cumulatively, did not reasonably tend to interfere with the employees' free choice in the election and was not a ground for setting aside the election. The Board ruled that the hearing officer correctly concluded that the statements by Union representatives did not constitute grounds for overturning the election results. The statements were made, says the Board, in the context of the generally competitive campaign environment; for example, the anti-union employees carried their own signs displaying slogans such as "Union Organizers, Here Today, Gone Tomorrow." At worst, it held, the statements were intemperate responses to provocative circumstances, and not studied attempts at voter intimidation. See NLRB v. Herbert Halperin Dist. Corp., 826 F.2d 287, 292 (4th Cir.1987). We agree with these conclusions and with the Board's finding that the statements do not justify setting aside the election.
 
 
 28
 In view of the above, Rheem's petition for review is denied, and the Board's application for enforcement is granted.
 
 PETITION DENIED
 
 
 *
 The Board assumed that the area in which Moore's and Burnett's activities occurred was properly considered an extension of the polling area