United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 1, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-61032
_____

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

VISTAR,

Respondent.

_____

On Application for Enforcement of an Order of the
National Labor Relations Board

_____

Before JONES, Chief Judge, and DeMOSS and OWEN, Circuit Judges.

PER CURIAM:*

Vistar of Dallas ("Vistar") petitions for review of an adverse order issued by the National Labor Relations Board ("the Board"). Because substantial evidence supported the Board's determination that Vistar unlawfully refused to bargain with its union, we DENY the company's petition, and GRANT the NLRB's cross-application for enforcement.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.  Background

In September 2003, the General Drivers, Warehousemen, and Helpers Local Union 745 ("the Union") filed a petition with the NLRB seeking to represent the drivers employed at Vistar's Dallas facility.  Vistar subsequently agreed to conduct an election by secret ballot at its facility to determine union representation for only those "drivers employed by the Employer at their location located at 5225 Investment Drive, Dallas, TX 75236."  Excluded from participating in the election were "[a]ll other employees, including office clericals, salespeople, warehouse employees, engineers, and guards, including supervisors and managers as defined in the [National Labor Relations] Act."

The election took place on October 24, 2003, and was extremely close, with a preliminary result of 17-14 in favor of the Union.  An additional five votes were challenged.  Two votes, those of Luke Jackson and William Malone, were challenged by the Union on the ground that the two men were supervisors at the time of the election and were therefore ineligible to vote.   The NLRB challenged three votes, those of Joe Vaz, Raymond Falcon, and Eric Mattingly, on the ground that they were not drivers on the day of the election.  Finally, Vistar objected to the election in its entirety, on the ground that Vaz, as a supposed agent of the Union, engaged in unlawful electioneering near the polling place.

2

A formal hearing was held on November 24, 2003, to evaluate these challenges and objections. In his report and recommendations, the hearing officer recommended that the Board certify the Union. Specifically, the hearing officer concluded that three ballots, including Malone's, should be counted. The hearing officer also concluded that two ballots, including Jackson's, should be excluded, and that Vaz's behavior did not warrant setting aside the election.

Vistar filed timely exceptions to the hearing officer's report and recommendations. The company challenged only the hearing officer's findings as to Jackson's status at the time of the election and Vaz's election day behavior. On June 24, 2004, a panel of the Board adopted the hearing officer's report and recommendations. This decision meant that the final result in the union election was 17-14 in favor of the Union, with two votes unopened. Because these two votes would not be determinative, the Board certified the Union as the Vistar drivers' exclusive collective bargaining representative.

Vistar subsequently refused to engage in collective bargaining with the Union. The Board issued a complaint alleging a violation of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1),(5). Vistar reiterated its contention that the certification of the Union was invalid. On September 30, 2004, the Board declined to reexamine Vistar's complaints, and ordered Vistar to cease and desist from refusing to bargain with the Union.

3

Cross-petitions in this court for review and enforcement of the Board's order followed.

## II. Discussion

A Board order "requiring an employer to negotiate with a union will be enforced if the NLRB's decision to certify the union is 'reasonable and based upon substantial evidence in the record.'" Avondale Indus. v. NLRB, 180 F.3d 633, 636 (5th Cir. 1999)(quoting NLRB v. McCarty Farms, Inc., 24 F.3d 725, 728 (5th Cir. 1994)). The certification order's validity depends in turn upon the validity of the underlying representation election. Avondale, 180 F.3d at 636; NLRB v. Hood Furniture Mfg. Co., 921 F.2d 325, 328 (5th Cir. 1991). Under the substantial evidence standard, this court may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Universal Camera Corp. v. NLRB, 340 U.S. 474, 480, 71 S. Ct. 456, 460 (1951). With these broad standards in mind, we turn to the two issues raised by Vistar.

### A. Jackson's Status

Vistar first argues that Jackson was employed as a "driver" at the time of the election and was eligible to vote in the representation election under the terms of the agreement between Vistar and the Union. In interpreting a voter eligibility agreement, this court looks to the parties' intent with regard to

4

the disputed employee. Knapp-Sherill Co. v. NLRB, 488 F.2d 655, 659 (5th Cir. 1974). Absent evidence indicating that the parties agreed to apply a different standard to their agreement, such disputes are resolved according to NLRB principles. Id. As the party challenging a voter's eligibility, Vistar bears the burden of establishing that the Board's eligibility determination was erroneous. Id.

Vistar and the Union agreed that only drivers were eligible to vote in the representation election, and that "all other" employees were ineligible. On October 16, 2003, Vistar announced Jackson's promotion to a supervisory position. On October 18, Jackson worked his last day as a driver, and on October 20, he was removed from his driving routes and received a new job title and pay grade. The election took place on October 24. Nevertheless, as Vistar notes, Jackson does not appear to have assumed supervisory authority as the term is understood under the National Labor Relations Act, 29 U.S.C. § 152(11), until at least November 16.

Jackson's eligibility depends solely on whether he was employed as a driver on the day of the election. Thus, Vistar's argument that Jackson was not a supervisor on October 24 is misplaced, even if it is correct under the statute. The Board sustained the Union's challenge to Jackson's ballot because "he was not employed and working in the Unit" on election day, not because Jackson had become a supervisor. That Jackson may not have become

5

a full supervisor on October 24 does not mean that he was a driver; the Board's holding that Jackson was not employed as a driver is supported by substantial evidence and will not be disturbed.[1]

## B.   Vaz's Conduct

Vistar next argues that Vaz, as a union agent, unlawfully interfered with the representation election.  Although the NLRB aspires to enforce "laboratory conditions" on election day, this court has recognized that this is an "unattainable goal," and that the court should therefore remain conscious of "the realities of industrial life" in reviewing the validity of a representation election.  McCarty Farms, 24 F.3d at 728 & n.2.  A representation election is not lightly set aside, and there is a strong presumption that ballots cast under NLRB safeguards represent the true desires of employees.  Hood Furniture, 941 F.2d at 328.  We must, however, carefully scrutinize misconduct allegations where the election results were close.  McCarty Farms, 24 F.3d at 728.

---

[1]     Vistar's argument in the alternative that Jackson was a supervisor trainee, and had the requisite "community of interests" with rank-and-file employees to vote, similarly misses the mark.  The "community of interests" test was developed in Curtis Indus., a Div. of Curtis Noll Corp., 218 N.L.R.B. 1447 (1975), a case that concerned whether management trainees were protected by the National Labor Relations Act, not whether such workers were part of a particular bargaining unit.  See NLRB v. Kent Corp., 564 F.2d 186, 188 & n.3 (5th Cir. 1977)(explaining Curtis).  As discussed, supra, the issue in the instant case is whether Jackson was a driver on October 24.  The record indicates that save a single occurrence, date unknown, in which Jackson filled in for a sick driver — a common practice for Vistar supervisors — Jackson performed no work as a driver after October 18.  Instead, he trained with supervisors before assuming his own supervisory post on November 16.  As such, the Board's decision was entirely consistent with the NLRB principle that an employee's "actual status" at the time of a representation election determines his or her eligibility to vote.  Nichols House Nursing Home, 332 N.L.R.B. 1428, 1429 (2000).

In its decision, the Board concluded that Vaz was not a union agent, and therefore applied the Hood Furniture test for misconduct by third parties, which requires a showing of misconduct "so aggravated that a free expression of choice of representation is impossible." Id. at 330. Vaz's conduct falls far short of this standard. Vistar urges this court to apply the stricter test for misconduct by a party to a representation election, whereby an election will be invalidated by any misconduct that had "a tendency to influence" its outcome. NLRB v. Gulf States Canners, Inc., 585 F.2d 757, 759 (5th Cir. 1978).

The record indicates that Vaz stationed himself on or near the ramp and walkway that led to Vistar's facility. He spoke to five drivers in the parking lot or on the ramp, each time making brief, personal pleas for the drivers' votes in favor of recognizing the Union. Additionally, after driver Terrence Shepherd had finished voting, Vaz approached Shepherd and asked him how he had voted. None of these conversations took place in designated no-electioneering zones, and the ramp and parking lot were at least forty feet from the polling area.

The hearing officer aptly compared Vaz to a union supporter found not to be an agent in United Builders Supply Co., 287 N.L.R.B. 1364 (1988). Based on this conclusion, the Board's application of Hood Furniture's third-party misconduct standard was proper. But even assuming arguendo that Vaz was acting as a Union agent on October 24, his conduct was not so harmful that it had a

7

tendency to influence the election.  The instant case is nearly identical to the facts of <u>Boston Insulated Wire & Cable Sys., Inc. v. NLRB</u>, 703 F.2d 876 (5th Cir. 1983).  In that case, union agents spoke to employees and handed out pamphlets as the employees walked from the parking lot and through a set of doors on their way to the polling place.  Applying the "tendency to influence" test, this court denied the employer's petition for review, finding

> (1) that the electioneering was not directed to employees waiting in line to vote; (2) that the electioneering did not occur at the polling place or in a no-electioneering area; (3) that the company never complained to the Board agent during the election; and (4) that the Board agent never instructed the union not to pass out the literature.

<u>Id.</u> at 882.  Three of the four of the reasons listed in <u>Boston Insulated</u> apply here, and Vaz did not hand out literature to the voters.  Further, the cases cited by Vistar are readily distinguishable.  In <u>NLRB v. Carroll Contracting & Ready-Mix, Inc.</u>, 636 F.2d 111 (5th Cir. 1981), voters were spoken to by union supporters while they waited in line to vote; additionally, the concerns of the employer regarding parking lot electioneering had been brought to the attention of the Board agent before the election.[2]  <u>Id.</u> at 112-13.  Similarly, in <u>Pepsi-Cola Bottling Co.</u>, 291 N.L.R.B. 578 (1988), the challenged conduct occurred in a no-electioneering zone

---

[2]    The case of <u>Nathan Katz Realty LLC v. NLRB</u>, 251 F.3d 981 (D.C. Cir. 2001), which held that union conduct within a no-electioneering zone could substantially impair voters' exercise of free choice, is also distinguishable from the instant case.  In <u>Katz</u>, the activities of union agents were contrary to NLRB instructions, and had been objected to by the employer.  <u>Id.</u> at 992.  Neither factor is present here.

where there was no physical barrier between union supporters and voters.

Thus, regardless of his agency status, under the totality of the circumstances, Vaz did not interfere with voters' ability to make a free choice in the election. As the "final minutes before" each Vistar driver cast his ballot remained "his own," this court will not invalidate the results of the representation election. McCarty Farms, 24 F.3d at 729 (quoting Milchem, Inc., 170 N.L.R.B. 362, 362 (1968)).

### III. Conclusion

The Board's certification of the Union was reasonable and was supported by substantial evidence. Therefore, the Board's order that Vistar cease and desist from refusing to bargain with the Union shall be **ENFORCED**. Vistar's petition for review is **DENIED**, and the NLRB's application for enforcement is **GRANTED**.